IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Larone F. Smith (#2013-0104173), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 C 5946 |
| v. ) | |
| ) | |
| Dr. Glenn Trammell, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Larone F. Smith, a pretrial detainee at the Cook County Jail who is proceeding *pro se*, filed this 42 U.S.C. § 1983 action against Glen Trammell (a physician assistant at the jail), Selu John (a former nurse at the jail), and Nurse Nancy Chackumkal, who still works at the jail (collectively "Defendants"). Plaintiff alleges Defendants were deliberately indifferent to his need to change his antidepressant Zoloft because the medication was causing him adverse side-effects, mainly headaches and itching. Currently before the Court is Defendants' motion for summary judgment, to which Plaintiff has responded. For the reasons stated herein, the motion is granted in part and denied in part. Summary judgment is granted as to Selu John and Glen Trammell, and the Court dismisses these Defendants. The Court denies summary judgment as to Nurse Chackumkal, and Plaintiff may proceed with his claim against her.

### BACKGROUND

**I. NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1**

The facts upon which the Court decides whether to grant summary judgment are taken from the parties' Local Rule 56.1 statements. Under the court's local rules, "a party filing a

motion for summary judgment . . . must serve and file 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (citation omitted); *see also* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment, *see* Local Rule 56.1(b)(3), to which the moving party must respond. *See* Local Rule 56.1(a)(3); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

In this case, Defendants filed a Rule 56.1 Statement of Material Facts with their motion for summary judgment. (Dkt. 30.) For the most part, the factual assertions therein are supported by materials in the record. Consistent with the local rules, Defendants provided Plaintiff with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 32) Plaintiff responded to Defendants' Rule 56.1 statements, agreeing with most of their factual assertions. (Dkt. 52.) With respect to the few Rule 56.1 statements with which Plaintiff disagrees, he points to nothing in the record to support his objection. Instead, he simply cites to the same materials cited by Defendants. (*See, e.g.,* Dkt. 30 ¶ 24; Dkt. 52 ¶ 24)

(Defendants' Rule 56.1 factual assertion states: "During Defendant Dr. Trammell's evaluation, Plaintiff did not exhibit any physical manifestations of any side effects" and cites Trammell's affidavit in support. Plaintiff's response, citing to the same affidavit, states: "During Defendant Dr. Trammell's evaluation, I did exhibit physical manifestations from the side effects . . ." Trammell's affidavit supports Defendants' Rule 56.1 factual assertion, but not Plaintiff's).

Plaintiff's responses do not comply with Local Rule 56.1(b)(3), and the Court thus accepts as true Defendants' Rule 56.1 statements. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 Fed. Appx. 607, 2017 WL 129943, at *1 (7th Cir. Jan. 13, 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Milton v. Slota*, 697 Fed. Appx. 462, 464 (7th Cir. 2017) ("the [district] court was entitled to strictly enforce the local rule, even against a pro se litigant, by

deeming uncontroverted statements of material fact admitted for the purpose of deciding summary judgment").

Nevertheless, "[b]ecause Plaintiff is proceeding pro se, . . . the Court has considered the factual assertions he makes in his response to Defendants' summary judgment motion, but only to the extent he has pointed to evidence in the record or could properly testify himself about the matters asserted." *Becerra v. Kramer*, No. 16 C 1408, 2017 WL 85447, at *2 (N.D. Ill. Jan. 10, 2017). Also, the Court is mindful that "a nonmovant's . . . failure to comply with Local Rule 56.1. . . does not . . . automatically result in judgment for the movant. The ultimate burden of persuasion remains with [the movant] to show that [he or she] is entitled to judgment as a matter of law." *Raymond*, 442 F.3d at 608 (citations omitted).

The Court therefore will recite the facts in Defendants' Local Rule 56.1(a)(3) statement—modified when necessary where the statement inaccurately characterizes the cited material—and Plaintiff's factual assertions that are supported by his record citations or about which he could testify, and then decide whether, on those facts, Defendants are entitled to summary judgment.

## II. FACTS

In the beginning of March of 2015, Plaintiff informed jail staff he was having thoughts of suicide or self-harming, and he stated in a telephone conversation with his mother that he wanted to end his life. As a result, he was transferred to Cermak Hospital, where he was placed on close observation. (Dkt. 30, Defs. SOF ¶ 9; Dkt. 52, Pl. Resp. ¶ 9.) He remained on close observation status at Cermak for four days. (*Id.* at ¶ 10.) On March 3, 2015, Psychiatrist Dr. Ralph Menezes prescribed 50 mg of Zoloft for depression and 25 mg of Benadryl for sleep. (*Id.* at ¶¶ 11-12.) The parties dispute whether Dr. Menezes discussed the side-effects of the medications with

[4]

Plaintiff at that time (Dr. Menezes reported he did; Plaintiff says he did not). (*Id.* at ¶ 13.) Plaintiff was diagnosed with depression as a child and took medications for it, but March of 2015 was the first time a doctor prescribed him an antidepressant. (*Id.* at ¶ 14.)

On March 4, 2015, Plaintiff reported that he felt better, he was not experiencing side-effects from the medications, and he believed his Benadryl dose should be higher. (*Id.* at ¶ 15.) Dr. Menezes doubled the dose for both medications to 100 mg of Zoloft and 50 mg of Benadryl. (*Id.* at ¶ 16.)

On March 14, 2015, Plaintiff submitted a Health Service Request ("HSR") form complaining of dry skin. (*Id.* at ¶ 17.) The record does not indicate what, if anything, occurred in response to this HSR.

On April 9, 2015, Plaintiff submitted another HSR asking to see a psychiatrist. Mental Health Clinician Hiroco Goodfriend (neither a Defendant nor a psychiatrist; presumably, he is a social worker or psychologist) saw him. Goodfriend noted that Plaintiff had an appointment with a psychiatrist scheduled for April 21, 2015 (records in the summary judgment materials show that the appointment was actually scheduled for April 22, 2015). (*Id.* at ¶¶ 18-19.)

On April 13, 2015, Defendant Nurse Selu John saw Plaintiff regarding his HSR about his medication causing him to itch. John scheduled an appointment for Plaintiff to see his primary care physician on April 16, 2015. (*Id.* at ¶ 22.)

On April 16, 2016, Defendant Physician Assistant Glen Trammell examined Plaintiff about his complaint of itching. (*Id.* at ¶ 23.) According to Trammell, Plaintiff had no rash, and Plaintiff does not recall having bumps or other manifestations of itching and scratching. (*Id.* at ¶¶ 24-25) (citing Dkt. 30-2, Pl. Dep. at 29; 30-4, Trammell Aff. ¶ 7.) Trammell nonetheless ordered

blood and urine tests in an attempt to diagnose the cause of Plaintiff's symptoms and placed him on the schedule for April 30, 2015 for results. (Dkt. 30, Defs. SOF at ¶ 26; Dkt. 52, Pl. Resp. at ¶ 26.) Plaintiff asked Trammell to change his medications. Trammell replied that only Plaintiff's psychiatrist could do that. (*Id.* at ¶ 27.) At that time, Plaintiff's next appointment with a psychiatrist was set for six days later on April 22, 2015. (*Id.* at ¶ 28.) Trammell did not evaluate Plaintiff again after the April 16, 2015 visit. (*Id.* at ¶ 29.)

Plaintiff missed the April 22 appointment with a psychiatrist because he was in court. The appointment was rescheduled to May 7, 2015. Plaintiff contends that his court dates are in the jail's computer system and that a psychiatrist appointment should not have been scheduled on the same day as court. (*Id.* at ¶ 20.) On April 22, 2015, Psychiatrist Dr. Tushar Advani—apparently without seeing Plaintiff—renewed Plaintiff's prescriptions for Zoloft and Benadryl with an expiration date of July 16, 2015. (*Id.* at ¶ 21.)

On April 23, 2015, Plaintiff submitted another HSR form complaining: "My medication that is on the medic[i]ne cart is making me itch, giving me diarrhea, makeing [sic] my private parts feel funny when I pee, wak[]ing me up in cold sweats, and just recently starting to give me headaches." (*Id.* at ¶ 30, quoting Dkt. 30-3, Exh. B, 15.) According to the medical records, Plaintiff refused to visit with medical personnel on April 25, 2015 to address the complaints in his April 23, 2015 HSR, and would not sign a refusal form. (Dkt. 30, Defs. SOF ¶ 31.) According to Plaintiff, he was never called for a medical visit on April 25—as explained above, Plaintiff cites to the same document cited by Defendants, which states that he refused to attend his medical visit. (Dkt. 52, Pl. Resp. ¶ 31.)

On April 28, 2015, Plaintiff filed another HSR with complaints similar to his April 23rd HSR. (Dkt. 30 at ¶ 32; Dkt. 52 at ¶ 32.) The following day, Plaintiff met with Defendant Nurse Chackumkal to address his HSR complaints. (*Id.* at ¶ 33.) Chackumkal referred Plaintiff for a mental health evaluation and treatment, and she informed Plaintiff that she could not change his medications. (*Id.* at ¶¶ 34-35.) She did, however, give Plaintiff non-prescription strength ibuprofen for his headaches. (*Id.* at ¶ 36.)

Based on Chackumkal's referral, Plaintiff saw mental health clinician Hiroko Goodfriend (not a psychiatrist) on April 30, 2015. Goodfriend scheduled or confirmed Plaintiff's appointment with a psychiatrist on May 7, 2015. (*Id.* at ¶ 37.) On May 5, 2015, Plaintiff was again evaluated by Goodfriend and another mental health clinician Mary Kosenka. This time, a May 13, 2015 appointment with a psychiatrist was confirmed. (*Id.* at ¶ 38) (the parties do not explain what happened to the May 5, 2015 appointment). The May 13, 2015 appointment was rescheduled to May 27, 2015. (*Id.* at ¶ 39.)

On May 11, 2015, in response to another HSR, Chackumkal again evaluated Plaintiff for headaches and itching. (*Id.* at ¶ 40.) Plaintiff again asked for a change in his medications. Chackumkal sent a copy of Plaintiff's HSR to the mental health department, confirmed Plaintiff had a visit with a psychiatrist scheduled for May 13, 2015, provided him with non-prescription strength pain relievers, and scheduled a primary care physician appointment for May 26, 2015. (*Id.* at ¶¶ 41-42) (citing Dkt. 30-3, pg. 24, Chackumkal's 5/11/15 Report: "Pl. states 'headaches on and off for 2 mhs. I need to change my psych meds.' Copy of HSRF forwarded to MH. Psych. visit scheduled for 5/13/15. MD on call notified regarding pt's concerns regarding h/a and

obtaining pain meds. OTC (over the counter) given per protocol for pain relief. Denies any blurry vision/dizziness @ this time. PCC APPT 5/26/15.").

On May 12, 2015, because of Chackumkal's referral, Mental Health Clinician Goodfriend again evaluated Plaintiff. (*Id.* at ¶ 43.) At that time, Plaintiff had an appointment to see a psychiatrist the following day. (*Id.* at ¶ 44.) As noted above, Plaintiff did not see a psychiatrist on May 13, 2015 because that appointment was rescheduled to May 27, 2015. The record does not indicate why the appointment (or any of Plaintiff's psychiatric appointments) was moved. (*Id.* at ¶ 39.)

On May 21, 2015, in response to another HSR wherein he complained of pain, itching, cold sweats, and irritation when urinating, Nurse Selu John evaluated Plaintiff. (*Id.* at ¶ 44.) According to medical records from that day, Plaintiff had headaches, but no trouble urinating, "good skin integrity," and was not itching. (*Id.* at ¶ 44, citing Dkt. 30-3, pg. 25.) Nurse John provided acetaminophen for Plaintiff's headache, but could not change his psychiatric medication as Plaintiff requested. (Dkt. 30, Defs. SOF ¶ 46; Dkt. 52, Pl. Resp. ¶ 46.) At the time of his visit with Nurse John, Plaintiff had an appointment with a psychiatrist set for May 27, 2015. (*Id.* at ¶ 47.) He also had an appointment with his primary care physician scheduled for that day. (*Id.* at ¶ 48.) Nurse John did not see Plaintiff after this visit.

On May 27, 2015, Plaintiff met with certified Physician Assistant Manisha Patel (not a defendant). Patel noted that Plaintiff's headaches were relieved with Tylenol and that Plaintiff believed he was reacting to the Zoloft. (*Id.* at ¶¶ 49-52; *see also* Dkt. 30-3 at 35.) Patel continued prescribing Tylenol, scheduled an eye exam (presumably to ensure Plaintiff's headaches were not

caused by a change in vision), and deferred to Plaintiff's psychiatrist for any change in his medications. (*Id.*)

Plaintiff's May 27, 2015 psychiatric appointment was rescheduled to June 15, 2015, which was then rescheduled to June 26, 2015, which was then rescheduled to July 20, 2015. (Dkt. 30, Defs. SOF ¶¶ 53, 56, 57; Dkt. 52, Pl. Resp. ¶¶ 53, 56, 57.) Again, the parties provide no explanation as to why Plaintiff's appointments with a psychiatrist were repeatedly rescheduled. The parties cite only a one-page listing of Plaintiff's medical appointments, which simply indicates if Plaintiff "checked out" for the appointment or if the appointment was "cancelled" or "rescheduled." (Dkt. 30-3, pg. 44.)

On June 16, 2015, Nurse Chackumkal examined Plaintiff. At that time, Plaintiff complained that he was still having intermittent headaches and that he was not getting his pain medication. (Dkt. 30 at ¶¶ 54-55; Dkt. 52 at ¶¶ 52-53.) He did not complain of any other side-effects of Zoloft during that visit, and the medical report from that date states: "Skin intact. No swelling/erythema noted. Instructed to keep skin clean and dry and drink enough fluids." (*Id.* at ¶ 55) (citing Dkt. 30-3, pg. 29.)

On July 20, 2015, Psychiatrist Dr. Tushar Advani examined Plaintiff. (*Id.* at ¶ 58.) This appears to be the first visit with a psychiatrist since March 14, 2015, when Plaintiff began complaining of side-effects from Zoloft and requesting to change this medication. By that time, Plaintiff's Zoloft prescription had expired, but he still complained of headaches and itching. (*Id.* at ¶ 59.) According to update.com, a website routinely used by physicians for medication information, itching and sweating are rare side-effects of Zoloft. (*Id.* at ¶¶ 60, 62.) Headaches are a common side-effect, but according to Dr. Advani, headaches may be caused by a variety of

factors unrelated to Zoloft. (*Id.* at ¶ 61) (citing Dkt. 30-5, Dr. Advani Aff.) Dr. Advani discussed Zoloft's side-effects with Plaintiff—including the rarity of skin rashes. Plaintiff, however, was convinced that Zoloft was causing his itching. (*Id.* at ¶ 63.) Dr. Advani switched Plaintiff's antidepressant from Zoloft to Prozac at that time. (*Id.* at ¶ 64.)

Plaintiff continued to experience headaches. (*Id.* at ¶ 65.) He often took naps to alleviate the pain. (*Id.*) He tried to obtain Tylenol, but was unable to do so. (*Id.* at ¶ 66.) Non-prescription strength pain relievers are available at the prison's commissary. Although Plaintiff purchased food at the commissary, he never bought pain relievers. (*Id.* at ¶¶ 67-68.)

On August 5, 2015, Plaintiff's Prozac prescription was changed to Celexa. (*Id.* at ¶ 69.) Dr. Advani avers he evaluated (though not necessarily personally saw) Plaintiff three times on July 20, 2015, August 5, 2015, and January 26, 2016. (Dkt. 30-5, Advani Aff. ¶ 4.) Plaintiff still experiences headaches with Celexa, but they occur less often and are less intense than when he was taking Zoloft. (*Id.* at ¶ 70.)

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett,* 477

U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (quotation omitted).

A prisoner seeking to prove a constitutional violation under § 1983 for denial of medical care must establish "both an objective and a subjective component." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014).[1] First, "the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Second, he must be able to prove that the "defendants were deliberately indifferent to the substantial risk." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).[2]

"An objectively serious medical condition is one that 'a physician has diagnosed as needing treatment' or that is so obviously serious 'that even a lay person would easily recognize the necessity for a doctor's attention.'" *McDonald v. Hardy*, 821 F.3d 882, 888–89 (7th Cir.

---

[1] Defendants contend they are entitled to qualified immunity, which "protects government employees from liability for civil damages . . . unless their conduct violates 'clearly established . . . constitutional rights of which a reasonable person would have known.'" *Lewis v. McLean*, 864 F.3d 556, 565–66 (7th Cir. 2017) (cite omitted). When addressing a defense of qualified immunity, courts ask: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015) (cite omitted). Defendants, however, do not contend that the constitutional right at issue in this case—deliberate indifference to an inmate's serious medical need, here a medication's side-effects—was not clearly established. Defendants' summary judgment motion simply contends that, based on evidence, Plaintiff cannot establish deliberate indifference.

[2] Although the Supreme Court, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015), applied an objective unreasonableness standard to an excessive force claim by a pretrial detainee, the Seventh Circuit has suggested that the deliberate indifference standard still applies to other types of claims by pretrial detainees. *See Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 554 n.31 (7th Cir. 2016) (acknowledging *Kingsley* but applying deliberate indifference standard to medical claim brought by pretrial detainee); *see also Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017) (declining to decide whether *Kingsley* requires, for detainee's medical claims, an objective unreasonableness standard versus a deliberate indifference standard).

[11]

2016) (quoting *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). "[A] medical condition that significantly affects an individual's daily activities[,] or the existence of chronic and substantial pain" can be an objectively serious medical condition. *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008). Plaintiff's symptoms—headaches, itching, an odd sensation when urinating, sometimes cold sweats during the night—arguably were not very serious, particularly considering them individually. But considering their combined effect and duration of four months, a jury could find that Plaintiff suffered a serious medical condition. *See Hall v. Wexford Med. Services*, No. 17-CV-00386-MJR, 2017 WL 1382895, at *3 (S.D. Ill. Apr. 18, 2017) (the cumulative effect of symptoms can be considered when determining the existence of a serious medical condition); *Pinkney v. Duncan*, No. 15-cv-00380-NJR, 2015 WL 1930785, at *2 (S.D. Ill. Apr. 28, 2015) ("mild headaches are not conditions of constitutional magnitude, while major, excruciating, or chronic headaches could be") (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Oliver v. Stadnicki*, No. 14 C 9149, 2015 WL 4266411, at *2 (N.D. Ill. July 10, 2015) (although ordinary rashes associated with athlete's foot and jock itch do not usually rise to the level of a serious medical condition, more serious cases can ). Plaintiff testified in his deposition that, while he was taking Zoloft: "Some days [his headaches were] light. Some days they [were] very strong. It hurt." (Dkt 30-2, Pl. Dep. at 30.) Considering Plaintiff's symptoms, a jury could find he suffered a serious medical condition to satisfy the first prong of his deliberate indifference claims.

As to the second prong of Plaintiff's deliberate indifference claims, however, the record demonstrates that he cannot succeed against two of the Defendants. The subjective element requires a sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Neither medical malpractice, nor negligence, nor

even gross negligence equates with deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). A defendant must have known the plaintiff was suffering a serious medical condition and deliberately taken inadequate steps to address the condition. For medical professionals, like all Defendants in this case, Plaintiff must prove that "the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that 'no minimally competent professional would have so responded under those circumstances.'" *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). "That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition.'" *Id.* (citation omitted).

With respect to Physician Assistant Trammell, he examined Plaintiff only once on April 16, 2015. Addressing Plaintiff's complaints that his psychiatric medication was causing him to itch, it is uncontested that Trammell examined Plaintiff's skin, ordered blood and urine tests in an attempt to diagnose the cause, advised Plaintiff that only a psychiatrist could change his psychiatric medication, and confirmed that Plaintiff had an appointment with a psychiatrist scheduled for six days later. The parties dispute whether Plaintiff exhibited any signs of itching at the time of Trammell's examination. But even if Plaintiff showed signs of itching, no reasonable jury could find that Trammell's response was "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Arnett*, 658 F.3d at 758 (prison doctor did not act with deliberate indifference to an inmate's arthritis condition when he prescribed a pain reliever (albeit not the one the prisoner had been taking), ordered x-rays, and confirmed the prisoner was receiving regular care by other prison medical personnel). As in

[13]

*Arnett*, "[t]his isn't a case where [Trammell] simply walked away from the situation and left [Plaintiff] without medical care." *Id.*; *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012).

Trammell has demonstrated that the record does not support a finding of deliberate indifference against him, and Plaintiff points to no evidence suggesting that Trammell could have or should have done more. "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 591 (7th Cir. 2016) (citations omitted). Summary judgment is warranted for Defendant Trammell.

Nurse Selu John is also entitled to summary judgment. He examined Plaintiff twice. The first time, on April 13, 2015, Plaintiff had recently seen a Mental Health Clinician Hiroco Goodfriend four days earlier, and he had an appointment with a psychiatrist scheduled for April 22, 2015. The April 22nd appointment was the first psychiatrist appointment scheduled since Plaintiff was prescribed Zoloft in early March of 2015.

During the second examination on May 21, 2015, the only side-effects Plaintiff reportedly had were headaches. Nurse John's examination indicated that Plaintiff reported no trouble urinating, no itching, and he had "good skin integrity." Nurse John administered acetaminophen and confirmed that Plaintiff's next appointments with a psychiatrist and his primary care physician were scheduled to occur six days later. At that time, Plaintiff had only two prior psychiatric appointments rescheduled, and one of those times was because Plaintiff was in court. Nothing in the record suggests Nurse John should have suspected a problem with Plaintiff's

psychiatric appointments not being kept. No reasonable jury could find that Nurse John acted with deliberate indifference based on the summary judgment record.

As to Nurse Chackumkal, however, a jury could find deliberate indifference based on the current record and viewing the evidence in the light most favorable to Plaintiff. Chackumkal saw Plaintiff three times: April 29, May 11, and June 16, 2015. Each visit was in response to Plaintiff's complaints of headaches, itching, and other symptoms he attributed to Zoloft. Each time, Chackumkal provided non-prescription strength pain relievers and referred him to mental health clinicians (social workers), even though he complained of no mental health problems, but instead, issues with his medication.[3] Although Plaintiff had appointments with a psychiatrist scheduled, those appointments were repeatedly rescheduled for four months. According to Plaintiff, the psychiatrists' offices were across the hall from Chackumkal's, (*see* Dkt. 51, pg. 8, 11), yet nothing in the record indicates what steps she took to ensure that Plaintiff saw a psychiatrist or other doctor to have his prescription changed.

By the time Nurse Chackumkal saw Plaintiff on June 16, 2015, four of Plaintiff's appointments with a psychiatrist had been unexplainably rescheduled—the last one being just the day before on June 15, 2015. While the record contains an affidavit from Defendant Trammell and a declaration from Nurse John, both explaining their response to Plaintiff's complaints, Chackumkal provides no statement or explanation as to her efforts to ensure that Plaintiff saw a doctor or someone who could assist him with his medication. "[A] medical professional's actions

---

[3] A social worker or psychologist is usually used for some form or psychotherapy, i.e., counseling, while a psychiatrist is a doctor that can prescribe and manage a patient's psychotropic medications. *See What's the Difference Between a Psychologist and a Psychiatrist?* at https://www.verywell.com/psychologists-vs-psychiatrists-what-is-the-difference-2795761. Psychiatrists can provide psychotherapy, "though medical and pharmacological interventions are often their focus." *Id.* A reasonable inference exists that Nurse Chackumkal knows the difference.

[15]

may reflect deliberate indifference if [s]he 'chooses an easier and less efficacious treatment without exercising professional judgment.'" *Arnett*, 658 F.3d at 754 (citation omitted). A medical professional "cannot simply continue with a course of treatment that [s]he knows is ineffective in treating the inmate's condition." *Id.*

According to Plaintiff, his appointments with a psychiatrist were in the jail's computer system, and a reasonable inference exists that, on June 16, 2015, Chackumkal had access to information that four of Plaintiff's psychiatric visits had been rescheduled and her two prior referrals to the mental health department were not enough to get Plaintiff a visit with a psychiatrist. Something more was required. The record is silent, however, as to what steps Nurse Chackumkal took to ensure Plaintiff saw a doctor. A jury could conclude that Chackumkal took the easier route of referring Plaintiff to non-physicians and refusing to take extra steps to ensure he saw a doctor.

Although one rescheduled psychiatrist appointment is insufficient for a jury to conclude that Nurse John acted with deliberate indifference by not ensuring that Plaintiff saw a doctor, the Court cannot say the same for four rescheduled appointments. At some point, viewing the evidence in the light most favorable to Plaintiff, repeating the same ineffective efforts supports a finding of deliberate indifference. If the blame lies elsewhere for the four-month delay with Plaintiff seeing a doctor after complaining of medication side-effects, such that Chackumkal's efforts could not be considered deliberate indifference, Defendants must provide such evidence. They have failed to do so at this stage. Summary judgment cannot be granted for Chackumkal based on this record.

## CONCLUSION

Defendants' motion for summary judgment [29] is granted in part and denied in part. Summary judgment is granted for Glen Trammell and Selu John, and these Defendants are dismissed. Summary judgment is denied for Nurse Nancy Chackumkal, and Plaintiff's claim against her may proceed.

**DATE:  January 19, 2018**

                                                  **ENTERED**

                                                  _____
                                                  **Amy J. St. Eve**
                                                  **United States District Judge**